# UNITED STATES.

### *v.*

# AYALA.

---

San Juan, Criminal, No. 654.

MOTION FOR NEW TRIAL.

Criminal Law—Lottery Tickets.
 Where it is shown that lottery tickets brought from a foreign

United States v. Ayala.

country to San Juan were thrown overboard by the defendant, coming from the transporting ship, a verdict of guilty of importation will not be disturbed.

Opinion filed July 22, 1918.

Mr. H. R. Francis for motion.

Mr. Miles M. Martin, District Attorney, for United States.

HAMILTON, Judge, delivered the following opinion:

The defendant was found guilty by verdict of a jury, composed entirely of Porto Ricans, of the offense denounced by the Penal Code, § 237, of bringing or causing to be brought into Porto Rico from Santo Domingo lottery tickets for purposes of disposition. It is urged that certain elements of the offense were not proved, and in particular the evidence did not show that the defendant had done more than bring the tickets towards the shore from a steamer which had touched at other places besides Santo Domingo.

The case at bar was of a long carriage by water, but it seems to me that the principle can be got at by stating the facts more simply. Suppose, for instance, that the two countries lay alongside separated by a stream or an imaginary line, and that it is a matter of public knowledge that lottery tickets from one were in frequent circulation in the other country. Suppose, further, that there was one high road, practically the only means of communication between the two, and that this was traversed by stage coach. Suppose that upon the arrival of that stagecoach within Porto Rico the defendant went to it and took out

X, Porto Rico.—33.

United States v. Ayala.

the package of lottery tickets, too large and numerous for his own use, and upon finding himself detected threw them down a cliff or kicked them into the shrubbery to one side, whence, however, they were discovered. In such case if a jury found the defendant guilty under this statute, I do not see how the court could set aside the verdict as not justified by the evidence.

In the case at bar the facts are more complicated, but can be reduced to the above effect in the last analysis. The tickets were done up neatly in what appeared to be an original package, pinned together in undisturbed groups of twenty-five each, the tickets bearing the date of the next regular drawing, and the lists inclosed giving the prizes of the last regular drawing before the date at which the steamer arrived, the package containing at least 500 tickets. The defendant in some way got them from the ship and was taking them to the shore, concealing them under the clothing of a baby he held in his arms, and when the detective tried to get the bundle the defendant shoved him to one side and threw the package overboard, all in the harbor at Ponce, Porto Rico. It would have been much more satisfactory had the government relied not solely upon inference as to where the defendant got the tickets, and had introduced some evidence from the ship itself, which was lying at anchor; but this was not done and the case has to be decided upon the facts in evidence.

There can be no reasonable doubt that these were lottery tickets coming from Santo Domingo in such quantity and at such recent date that they must have been brought here not for personal use, but for sale. The only question would be as to how the defendant Ayala came in possession of them upon the steamer which had come from Santo Domingo. He got them in some way, and there would seem to be but four possible methods.

In the first place he might have picked them up on the boat by accident, but this seems so improbable as not to deserve attention. Second, someone might have sent them ashore by him, but the package is not addressed, and his conduct in trying to conceal it shows that it was his own. Third, he might have bought them for his own account, and he would have the right to do that so far as this law is concerned, whether they were lottery tickets or not. The improbability of there being a place for purchase on board the boat would probably strike the mind of the jury as negativing this method of acquiring them. There only remains, therefore, the fourth explanation, that there was some arrangement between him and whoever brought them from Santo Domingo by which Ayala was to be the last, but none the less necessary, link in the chain of importing them into the United States. These possibilities were given in the charge to the jury, and the court sees no reason to change them.

The jury found in favor of the fourth contingency, and the court cannot say that it could not properly infer and infer it beyond a reasonable doubt from the facts which were in the case. That it is circumstantial is no objection at all to it. As the court told the jury, the question was, Is there any reasonable explanation of the defendant's action except that of guilt under the statute? This issue the jury found against the defendant.

The motion in arrest of judgment and the motion for a new trial are accordingly denied.

It is so ordered.